IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| **Steve Noviello,** § § § § | |
| Plaintiff, § | Civil Action No. 3:22-cv-00052 |
| v. § § | |
| **Holloway Funding Group,** § § | **Jury Trial Demanded** |
| Defendant. § § § | |

# COMPLAINT

**Steve Noviello** (Plaintiff), by and through his attorneys, **Kimmel & Silverman, P.C.**, alleges the following against **Holloway Funding Group** (Defendant):

## INTRODUCTION

1. Plaintiff's Complaint is based on the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227, *et seq.* and common law claims for negligent training, hiring and supervision and invasion of privacy.

## JURISDICTION AND VENUE

2. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. See <u>Mims v. Arrow Fin. Servs., LLC</u>, 565 U.S. 368, 386-87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

3. Supplemental jurisdiction for Plaintiff's related state law claims arises under 28 U.S.C. §1367.

4. Defendant regularly conducts business in the State of Texas.

5. The occurrences from which Plaintiff's cause of action arises took place and caused Plaintiff to suffer injury in the State of Texas.

6. With each telephone made by Defendant to Plaintiff's cell phone-which has a "214" area code, associated with the Dallas-Fort Worth region- Defendant knowingly and purposefully availed itself to the State of Texas and to this District specifically.

7. Accordingly, this Court has personal jurisdiction over Defendant in this matter.

8. Furthermore, Venue is proper under 28 U.S.C. § 1391(b)(2).

## PARTIES

9. Plaintiff Noviello is a natural person residing in Dallas, Texas 75219.

10. Mr. Noviello is a "person" as that term is defined by 47 U.S.C. § 153(39).

11. Defendant is a business entity with principal place of business, head office, or otherwise valid mailing address at 125 Remount Rd Ste C1 PMB 1035, Charlotte, North Carolina 28203

12. Defendant is a "person" as that term is defined by 47 U.S.C. § 153(39).

13. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

## FACTUAL ALLEGATIONS

14. At all times relevant hereto, Plaintiff owned a cellular telephone, the number for which was (214) XXX-0779

15. Plaintiff registered his cell phone number on the Do Not Call Registry in or around January 2016.

16. Plaintiff registered his number on the Do Not Call registry in order to obtain solitude from unwanted and invasive telemarketing calls.

17. Plaintiff used his cell phone for primarily residential purposes.

18. Defendant Holloway Funding Group is a lending company that holds itself out as providing financing to business owners and entrepreneurs.

19. Plaintiff did not provide express written consent- or any consent for that matter - to receive telemarketing calls or texts from Holloway Funding.

20. Furthermore, Holloway Funding did not provide the requisite disclosures to Plaintiff before issuing telemarketing and/or auto-dialed calls and messages to Plaintiff.

21. Nonetheless, Defendant placed repeated harassing calls/texts to solicit its lending services.

22. Holloway began its telemarketing campaign toward Mr. Noviello after obtaining his consumer data from what appears to be a series of shadowy data transfers to which Mr. Noviello had no part and did not assent.

23. Specifically, upon information and belief, on or around April 28, 2021 Holloway Funding received a "lead" with a misspelled variation of Plaintiff's name "Steve nobielo" (sic). (*See* Ex. A, Holloway Printout Showing "Client Dashboard.")

24. While Holloway could not explain to Mr. Noviello where it received his contact information, Holloway's "client dashboard" lists the data source associated with Plaintiff's account as "AGED TRANS." (Ex. A.)

25. Similarly, the history of the account identifies the origin of Mr. Noviello's account as "Contact imported from data source AGED TRANS." (Id.)

26. Critically, Holloway does not (and could not) contend that Mr. Noviello provided express written consent or that the company provided the required disclosures before making telemarketing calls/texts or using an autodialer.

27. Likewise, Holloway does not (and could not) contend that it had an existing business relationship with Noviello.

28. Between April 28, 2021 - the date where Holloway received Plaintiff's data- and June 14, 2021, Holloway placed telephone communications to Plaintiff including but not limited to:

- 4/28/21 2:00 PM CST from 1-888-403-4649 (text);
- 4/28/21 2:03 PM CST from 1-888-402-4649 (text);
- 4/28/21 3:35 pm CST from number unknown (call);
- 4/30/21 11:12 AM CTS from 1-833-590-0575 (text;)
- 5/3/21   4:22 pm CST from number unknown (call);
- 5/20/21 10:30 AM CST from 1-855-773-1004 (text;)
- 5/25/21 11:33AM CST from 1-844-580-2053 (text);
- 6/7/21 11:59 AM CST from 1-844-669-0057 (text);
- 6/11/21 11:32 AM CST from 1-888-403-4597 (text;)
- 6/14/21 5:22 pm CST from number unknown (call);

29. During the June 14, 2021 call, a frustrated Mr. Noviello instructed Holloway to stop its unwanted telemarketing calls to his phone.

30. The message from Plaintiff was clear and unequivocal.

31. That clear and unequivocal message was understood and recorded by Holloway. *(See Ex. A.)*

32. Specifically, the "history" of Noviello's account in Holloway's records reads "Closed – Lost- DNC[1]" as of 5:22 pm on June 14, 2021. (Id.)

33. After acknowledging and recording the "do not call" instruction from Noviello, Holloway nonetheless placed the following telephone solicitations to Plaintiff in furtherance of its efforts to issue loans/funding Plaintiff did not want or need:

- 6/21/21 11:57 AM CST from 1-844-484-0832 (text)
- 6/29/21 12:37 AM CST from 1-844-484-0832 (text;)
- 7/23/21 1:08 PM CST from 1-833-578-0364 (text);
- 9/14/21 10:57 AM CST from 1-888-678-1546 (text;)
- 9/14/21 11:00 AM CST from 1-888-678-1546 (text);
- 10/29/21 11:16 AM CST from 1-855-786-0080 text); and
- 10/29/21 11:23 AM CST from 1-855-786-0080 (text).

34. Without having had the benefit of discovery, Noviello cannot state with certainty the type of dialing system Defendant used to place phone calls and transmit text messages to Plaintiff.

35. However, it is apparent that at least some of the subject text messages sent by Holloway were sent using an automatic telephone dialing system.

36. For instance, on June 29, 2021, Holloway texted to Noviello: "Ready to look at updated funding options? We put together numbers for the business in the pst and would love to give you updated terms! Reply stop to stop."  (Ex. C, text message screenshots, 06/29/2021).

---

[1] "DNC" is telemarketing industry shorthand for "do not call."

37. In order to ascertain who was sending him unauthorized solicitation texts, Plaintiff responded: "Which company"

38. Holloway responded in a jarringly non-interactive manner, writing back "The keyword you are trying to use is not available on this number." (Ex. C.)

39. Accordingly, it is apparent that on at least some of the messages sent to Noviello Holloway utilized "message blasts" of automatic messages sent *en masse* to high volumes of consumers, rather than individualized communications from live persons.

40. Those messages were not sent by live agents but were transmitted through mass automatic transmissions which use random or sequential number generators to send the messages to numbers from a stored list.

41. Through discovery, Plaintiff will learn precisely how those messages were sent, and how many text messages were sent through ATDS message blasts.

42. Plaintiff attempted to find out why and how Holloway had placing so many telemarketing messages despite the lack of consent, lack of business relationship and clear instruction to stop the calls and texts.

43. In November of 2021, Noviello inquired with Holloway as to why these calls and texts were ever made and how the company got his information.

44. On November 9, 2021, Holloway responded to Plaintiff:

> We obtain our data in multiple different places from social media opt ins, website opt ins, email marketing, google adword campaigns, overseas call centers, & data companies like experian, lendingtree, etc. Your contact record was originated by a US based call center that completes live transfers to companies like Holloway. We also use multiple subcontractors that originate contact with potential clients and I have to assume that is how you've received these text messages. I do notice that a few of them are from other companies outside of Holloway. Back to where your record originated from; the call center that would have

contacted you originally would have created your record in one of the following ways: Online opt in or UCC1 filing. **I can't say exactly how they found your contact information originally but I would assume since they had transferred you at any point in time there are multiple companies selling your record to other companies.** Again as we have shown you were moved to our internal DNC list back in June to eliminate the possibility of our employees reaching out to you. The contact made in May & June would have been prompted by your response to the call in April, but I assure you as soon as you had requested contact to stop you were unsubscribed from our system. (emphasis added).

(Ex. B, email from Holloway, Nov. 9, 2021

45. Needless to say, it is highly problematic that in a time where consumer privacy is eroding and citizens' data is regularly bought and sold with wanton disregard for privacy rights or even accuracy, that Holloway does not even attempt to obtain express written consent before telemarketing and *cannot even say where it got Plaintiff's contact information* before inundating him with telemarketing calls and texts.

46. Holloway does not adequately supervise its employees, agents or vendors.

47. Holloway lacks adequate policies or procedures in place to assure it has consent to call and telemarketer to consumers.

48. Holloway lacks adequate policies or procedures in place to protect consumer data privacy and data accuracy.

49. Holloway lacks adequate policies or procedures in place to assure consumers' "do not call" or "cease-and-desist" instructions are followed.

50. Defendant's calls were not made for "emergency purposes."

51. Defendant's incessant calls were bothersome, disruptive and frustrating for Plaintiff to endure.

## COUNT I
## **DEFENDANT VIOLATED THE TCPA 47 U.S.C. §227(b)**

52. Plaintiff incorporates the forgoing paragraphs as though the same were set forth at length herein.

53. The TCPA prohibits placing calls using an automatic telephone dialing system or automatically generated or prerecorded voice to a cellular telephone except where the caller has the prior express consent of the called party to make such calls or where the call is made for emergency purposes. 47 U.S.C. § 227(b)(1)(A)(iii).

54. Defendant initiated multiple text messages to Plaintiff using an automatic telephone dialing system.

55. The dialing system used by Defendant to call Plaintiff has the present and/or future capacity to dial numbers in a random and/or sequential fashion.

56. Specifically, Defendant uses algorithms to select the sequence of calls/texts to be dialed from a stored list of telephone numbers.

57. Defendant uses a dialing system that dials or stores numbers using a random or sequential number generator.

58. Defendant's dialing system used to text Plaintiff is therefore an "automatic telephone dialing system" as defined by the TCPA.

59. Defendant's calls were not made for "emergency purposes."

60. Defendant's texts to Plaintiff's cellular telephone using an ATDS were without any prior express consent.

61. Defendant contacted Plaintiff despite the fact that Plaintiff's numbers was on the Do Not Call Registry since 2016.

62. Accordingly, Defendant's acts as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law and with the purpose of harassing Plaintiff.

63. The acts and/or omissions of Defendant were done unfairly, unlawfully, intentionally, deceptively and fraudulently and absent bona fide error, lawful right, legal defense, legal justification or legal excuse.

64. As a result of the above violations of the TCPA, Plaintiff has suffered the losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and trebles damages.

**COUNT II**
**TCPA: 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d**
**Federal Do Not Call Registry**

65. Plaintiff incorporates the forgoing paragraphs as though the same were set forth at length herein.

66. The TCPA prohibits any person or entity of initiating any telephone solicitation to a residential telephone subscriber who has registered his or his telephone number on the National Do-Not-Call Registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. 47 U.S.C. § 227(c)(5).

67. Defendant contacted Plaintiff despite the fact that Plaintiff has been on the Do Not Call Registry since 2016.

68. Defendant called Plaintiff on multiple occasions during a single calendar year despite Plaintiff's registration on the Do Not Call list.

69. Defendant's acts as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law and with the purpose of harassing Plaintiff.

70. The acts and/or omissions of Defendant were done unfairly, unlawfully, intentionally, deceptively and fraudulently and absent bona fide error, lawful right, legal defense, legal justification or legal excuse.

71. As a result of the above violations of the TCPA, Plaintiff has suffered the losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and trebles damages.

## COUNT III
### TCPA:  47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d)
### Internal Do Not Call Policies

72. Plaintiff incorporates the forgoing paragraphs as though the same were set forth at length herein.

73. The code promulgated by the FCC, 47 C.F.R. § 64.1200 et seq. requires telemarketers to have an internal do-not-call written and available do not call policy, provide training for said policy, and implement and honor such a request. 47 C.F.R. § 64.1200(d)(1)-(5).

74. While Holloway apparently does record certain "do not call" requests from consumers (as it did for Noviello), it clearly does not train its employees, agents or vendors to honor those requests, or otherwise implement or honor "do not call' requests itself.

75. The fact that Holloway recorded Plaintiff's do-not-call request yet continued to call and text reflects that its violations were knowing and willful.

76. Accordingly, Plaintiff is entitled to statutory and treble damages.

## COUNT IV
### Negligent Training, Hiring and Supervision

77. Plaintiff incorporates the forgoing paragraphs as though the same were set forth at length herein

78. In order to prevail on a claim for negligent training, hiring and supervision, the plaintiff "must also show she 'suffer[ed] some damages from the foreseeable misconduct of an employee' who was hired, supervised or retained pursuant to the defendant's negligent practices." Clark v. PFPP Ltd. P'ship, 455 S.W.3d 283, 287 (Tex. App. 2015) (quoting Waffle House, Inc. v Williams, 313 S.W.3d 796, 804 n. 27 (Tex. 2010), and citing to Wansey v. Hole, 379 S.W.3d 246, 247 (Tex.2012) (per curiam)).

79. Here, it is widely known that unwanted robocalls and telemarketing calls/text messages are among the top complaints among US consumers to regulatory agencies.

80. It is also known that Americans feel their privacy rights are eroding.

81. Holloway knew at all times it is required to obtain express written consent from consumers before telemarketing, yet did not even attempt to do so.

82. Holloway retains vendors and agents to place calls on its behalf without any method of monitoring those vendors or assuring they are engaging in proper practices and procedures.

83. Holloway knew that Mr. Noviello wanted the calls to stop and even recorded his "do not call" instruction.

84. Because Holloway lacks protocols, supervision, and proper training of employees, vendors, and agents, Holloway lacked the ability to even implement its internal Do Not Call procedure.

85. Plaintiff suffered damages, losses and harm as a result of Defendant's negligent training, hiring and supervision.

86. Defendant's violations were reckless and outrageous, entitling Plaintiff to punitive damages.

## COUNT V
### Invasion of Privacy by Intrusion Upon Seclusion

87. Plaintiff incorporates the forgoing paragraphs as though the same were set forth at length herein.

88. The elements of a cause of action in Texas of invasion of privacy by intrusion upon seclusion are (1) an intentional intrusion upon a person's solitude, seclusion or private affairs (2) that would be highly offensive to a reasonable person and (3) as a result of which the person suffered an injury.

89. By sending repeated harassing text messages demanding money after Plaintiff demanded the organization stop the texts, Defendant intruded upon Plaintiff's seclusion.

90. The repeated defiance of Plaintiff's demands for solitude would be highly offensive to a reasonable person.

91. As a result of Defendant's actions outlined above, Plaintiff suffered injury in the form of stress, anxiety, anger and disruption of his daily life.

92. Defendant's acts were egregious and offensive and warrant punitive damages.

## PRAYER FOR RELIEF

**Wherefore**, Plaintiff, **Steve Noviello,** respectfully prays for judgment as follows:

a. All actual damages Plaintiff suffered (as provided under 47 U.S.C. § 227(b)(3)(A);

b. Statutory damages of $500.00 per violative telephone call (as provided under 47 U.S.C. § 227(b)(3)(B));

c. Additional statutory damages of $500.00 per violative telephone call (as provided under 47 U.S.C. § 227(C);

d. Treble damages of $1,500.00 per violative telephone call (as provided under 47 U.S.C. § 227(b)(3));

e. Additional treble damages of $1,500.00 per violative telephone call (as provided under 47 U.S.C. § 227(C);

f. Injunctive relief (as provided under 47 U.S.C. § 227(b)(3) and (c);

g. Compensatory damages pursuant to Plaintiff's claims for negligent training, hiring and supervision, invasion of privacy; and

h. Punitive damages for Plaintiff's claims for negligent training hiring and supervision and invasion of privacy; and

i. Any other relief this Honorable Court deems appropriate.

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiff, **Steve Noviello**, demands a jury trial in this case.

|   |   |
|---|---|
|   | Respectfully submitted, |
| Dated: January 10, 2022 | By: /s/ *Jacob U. Ginsburg* |
|   | Jacob U. Ginsburg, Esq. |
|   | Kimmel & Silverman, P.C. |
|   | 30 East Butler Ave. |
|   | Ambler, PA 19002 |
|   | Phone: (215) 540-8888 ext. 104 |
|   | Facsimile: (877) 788-2864 |
|   | Email: jginsburg@creditlaw.com |
|   | teamkimmel@creditlaw.com |