IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEVE NOVIELLO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:22-cv-52-BN |
| | § | |
| HOLLOWAY FUNDING GROUP, | § | |
| | § | |
| Defendant. | § | |

**ORDER ON PLAINTIFF'S MOTIONS IN LIMINE AND
DEFENDANT'S OBJECTIONS TO PLAINTIFF'S TRIAL EXHIBITS**

For the reasons and to the extent explained below, the Court grants in part and denies in part Plaintiff's Motions in Limine [Dkt. No. 53].

"A motion in limine is a motion made prior to trial for the purpose of prohibiting opposing counsel from mentioning the existence of, alluding to, or offering evidence on matters so highly prejudicial to the moving party that a timely motion to strike or an instruction by the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors' minds." *O'Rear v. Freuhauf Corp.*, 554 F.2d 1304, 1306 n.1 (5th Cir. 1977)

The Court previously ordered that "[m]otions in limine must be limited to matters that meet the following requirements: (1) the matter cannot adequately be raised by an objection at trial without prejudicing the moving party and (2) the prejudice of mentioning the matter in the jury's presence cannot be cured by an instruction from the Court. Motions in limine must include neither 'standard' requests not tailored to a case-specific matter nor issues presented in an effort to

obtain substantive rulings that should have been requested in advance of trial by appropriate motion." Dkt. No. 21 at 3.

And another judge has explained that "[t]he purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence"; that "[e]vidence should not be excluded in limine unless it is clearly inadmissible on all potential grounds"; and that, "[t]o that end, evidentiary rulings should often be deferred until trial so that questions of foundation, relevancy and potential prejudice can be resolved in proper context." *Ramachandran v. Jain*, No. 3:18-cv-811-X, 2022 WL 4004793, at *1 (N.D. Tex. Aug. 16, 2022) (cleaned up).

"Requests for broad in limine exclusions are better deferred until trial "so that questions of foundation, relevancy and potential prejudice can be resolved in proper context," and the "[d]enial of a motion in limine does not mean automatic admission at trial; rather, it merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." *Orchestrate HR, Inc. v. Trombetta*, No. 3:13-cv-2110-KS, 2017 WL 273669, at *1 (N.D. Tex. Jan. 20, 2017) (cleaned up).

### I. PLAINTIFF'S MOTION IN LIMINE NO. 1 (EXCLUSION OF HOLLOWAY'S TRIAL EXHIBIT 6: FOX 4 NEWS CLIP ON TCPA)

The Court can properly grant a motion in limine to make a pretrial ruling excluding an exhibit from evidence it if it is clearly inadmissible on all potential grounds. The Court determines that that is the case with Defendant Holloway Funding Group's Exhibit 6, a Youtube video of Steve Noviello in his role as a

newscaster discussing the Telephone Consumer Protection Act and the statutory damages the law affords consumers.

As to Article III standing, following the United States Court of Appeals for the Fifth Circuit's decision in *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 689 (5th Cir. 2021), "a single text message is a nuisance and an invasion of privacy and, thus, can alone establish standing," and, where a plaintiff "alleges her cellphone number was on the national Do-Not-Call list; she asked telemarketers … multiple times to stop calling her cellphone and to place her on its internal Do-Not-Call list; and the Defendants continued to call her cellphone," the plaintiff "is not required under the TCPA to allege facts explaining how receipt of these calls to her cellphone caused her harm." *Long v. Cat Exteriors*, No. SA-22-CV-00923-JKP, 2022 WL 17744052, at *2 (W.D. Tex. Dec. 15, 2022) (cleaned up).

So, too, in Noviello's case, the Court finds Article III standing is satisfied where he alleges similar claims.

> Holloway responds by asserting that "the video is relevant for two reasons":
>
> First, to recover damages, Noviello must prove an actual injury. The video shows that Noviello welcomes telemarketing calls so he can threaten and/or file lawsuits to collect money. He is, therefore, not harmed by such calls.
> Second, the video is relevant to the question of Noviello's standing. The "[t]he TCPA protects residential telephone subscribers from unwanted calls and texts, and as Plaintiff argues in its motion, a single unwanted text may confer standing," but that "a plaintiff who welcomes such calls is not harmed, and thus is not a proper plaintiff to use the judicial system for his own gain."

Dkt. No. 55 at 1.

But that is not the sense of "unwanted" at issue, and Noviello has sufficiently alleged the required actual injury to proceed with his TCPA claims – and this video is not relevant to that analysis. Noviello alleges he registered his cell phone number with the national Do Not Call Registry, and yet Holloway caused him to receive calls and texts anyway.

In the related context of "a prolific filer of TCPA suits," courts have "rejected the argument that because prolific filers turn telephone solicitations into money makers, they are not harmed and thus cannot bring a TCPA suit," reasoning that "[t]hat a plaintiff has filed numerous TCPA claims does not alone divest that plaintiff of standing to sue" and where a plaintiff "alleges his phone number was on a 'Do Not Call' list and there is no indication that he ever called Defendant," the "[p]laintiff's other TCPA suits do not block him from proceeding with the instant case." *Horton v. Multiplan, Inc.*, No. 3:21-cv-1542-S-BK, 2021 WL 5868328, at *4 (N.D. Tex. Nov. 24, 2021) (cleaned up), *rep. & rec. adopted*, 2021 WL 5866893 (N.D. Tex. Dec. 10, 2021). As another court explained at length,

> [n]or is there anything out of the ordinary or constitutionally suspect about a plaintiff's being motivated by the prospect of reaping a reward rather than simply vindicating or receiving restitution for his constitutionally sufficient injury. The statutory damages available under the TCPA are, in fact, specifically designed to appeal to plaintiffs' self-interest and to direct that self-interest toward the public good….
> 
>    The determinative issue, then, is not Cunningham's motivations, but whether he was injured. An ordinary consumer who pled the facts that Cunningham has pled would have established a concrete and particularized injury-in-fact based on the Defendants' intrusion upon his rights to privacy and seclusion. Defendants suggest that, by becoming a so-called "professional plaintiff," he has forfeited those rights because the calls alleged were not truly unwanted. …. It may be that Cunningham was not saddened or annoyed by the calls he received;

> it may even be that, knowing his rights under the TCPA, he is glad the calls were placed. But allowing that fact, even if true, to negate his right to privacy and seclusion would require the Court to embrace a line of reasoning that would ultimately undermine the rights of most, if not all, TCPA plaintiffs and plaintiffs in similar statutory schemes. The TCPA entitles a plaintiff to statutory damages in the generous amount of $500 per violation – a figure that can be tripled for a willful and knowing violation. 47 U.S.C. § 227(b)(3), (c)(5). The Court ventures to guess that many ordinary people – not merely "professional plaintiffs" – would accept the fleeting invasion of their privacy associated with an unsolicited robo-call for the reward of $1500 – or even $3000, if more than one TCPA provision was violated. If Cunningham has forfeited his right to privacy because he allegedly welcomed the calls, so too have those potential plaintiffs – or, at the very least, they lost their privacy rights the moment they understood they could sue to vindicate them. The RRMS Defendants seem to imagine a Constitution that limits the right to sue under the TCPA to those who are ignorant of their right to sue under the TCPA.
>
> The Constitution requires no such result. The appropriate constitutional inquiry, rather, is whether a protected right was invaded, not whether the plaintiff subjectively considered the injury worth the eventual reward. Cunningham, like every other private citizen, has rights to privacy and seclusion recognized by the law and protected from certain trespasses on those rights. The Court sees no authority for the proposition that his privacy interests ceased to exist merely because he realized that he could profit from suing for their invasion.

*Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187, 1195-96 (M.D. Tenn. 2017) (cleaned up).

Even if Noviello's standing or required actual injury could present factual issues for the jury to consider, the Court finds, based on this analysis, that this video is not relevant to his standing or actual injury because welcoming telemarketing calls so he can file lawsuits for damages does not affect his injury or standing under the TCPA.

And the Court agrees with Noviello that the video, even if somehow relevant, should be excluded under Federal Rule of Evidence 403 because any probative value

is substantially outweighed by the danger of unfair prejudice. As Noviello notes, the video could "improperly mislead the jury to misunderstand what they are being asked to determine," where "[t]he image of Noviello sitting with stacks of money could easily prejudice the jury into believing Noviello is misusing the statute to become rich and make hundreds of thousands of dollars, where he was simply attempting to entertain local news viewers by providing a tongue-in-cheek visual prop, while informing viewers in his capacity as a newscaster." Dkt. No. 53-1 at 2-3. And, again, using the TCPA to sue on the kind of conduct that the statute targets, and doing so to pursue statutory damages, is not a misuse of the statute.

The Court grants Plaintiff's Motion in Limine No. 1 and excludes Holloway's Trial Exhibit 6.

## II. PLAINTIFF'S MOTION IN LIMINE NO. 2 (ADMISSION OF PLAINTIFF'S EXHIBITS 3-10 AND 12: HOLLOWAY'S TEXT MESSAGES)

"As reflected in the list of Defendant's objections within Plaintiff's exhibit list, Defendant Holloway objects to the introduction of the text messages listed as Exhibits 3-10 and 12, which are text messages that Plaintiff understands came from Holloway," and Noviello "seeks an Order rendering those exhibits admissible." Dkt. No. 53-2 at 1; *see also* Dkt. No. 54 at 1-2. Noviello acknowledges that "Defendant argues this is more appropriate for a trial objection," but "the motion involves enough analysis on the hearsay rules where Plaintiff believes it is appropriate for concise briefing." Dkt. No. 53 at 1.

Holloway responds that Noviello "seeks to skip forward past the requisite presentation of the evidence necessary to lay a foundation for his exhibits, and have them preadmitted." Dkt. No. 55 at 2.

The Court appreciates what it will treat as a trial brief on evidentiary issues that will arise with these exhibits but agrees with Holloway that the Court need and should not preadmit them over Holloway's objections before trial.

The Court denies Plaintiff's Motion in Limine No. 2.

### III. PLAINTIFF'S MOTION IN LIMINE NO. 3 (MOTION TO PRECLUDE HOLLOWAY FROM CLAIMING NOVIELLO CONSENTED TO THE CALLS AND TEXTS)

Noviello asserts that,

> [i]n the Joint Proposed Pre-Trial Order, Holloway contended "Plaintiff's TCPA claims fail because he gave his consent to receive the calls." Doc. No. 50, p. 8, Def. defense no. 1. Because "express written consent" is an affirmative defense where the defendant carries the burden of proof, and because Holloway cannot present any evidence of such consent, it should be precluded from claiming such written consent was provided.
>
> On summary judgment, this Court ruled the paragraph of Adam Wines' declaration where he asserted he obtained Noviello's "consent" from a third-party lead list was inadmissible. There is no reason for the Court to diverge from that ruling at trial.
>
> The TCPA's prohibition on solicitations to those numbers on the national do-not-call registry requires "express" consent of the telephone subscriber for consent to constitute an affirmative defense to the caller's liability, where the defendant bears the burden of proof. *See* 47 C.F.R. § 64.1200(c)(2)(ii) ("Any person or entity making telephone solicitation (or on whose behalf telephone solicitations are made) will not be liable for violating this requirement if . . . [i]t has obtained the subscriber's prior express invitation or permission."). This consent, however, must be in writing to be valid. *Id.* ("Such permission must be evidenced by a signed, written agreement between the consumer and seller and includes the telephone number to which the calls may be placed . . . ."). *Atkinson v. Pro Custom Solar LLC*, No. SA-21-CV-00178-OLG, 2022 U.S. Dist. LEXIS 158629, 2022 WL 4071998, at *14 (W.D. Tex. Sep. 1, 2022). Regarding this consent, the FCC has also explained that "should any

> question about the consent arise, the seller will bear the burden of demonstrating that a clear and conspicuous disclosure was provided and that unambiguous consent was obtained." *Id.* at 1844. *Atkinson*, 2022 U.S. Dist. LEXIS 158629, at *16 citing *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012).
> 
> Here, in the course of discovery Holloway has not produced any evidence of a signed written agreement showing unambiguous consent upon a clear and conspicuous disclosure. Any statement somehow alluding to the existence of this supposed agreement, purportedly provided to Holloway by a third-party, would be an out of court statement offered for the truth of the matter, not subject to any hearsay exception.
> 
> Accordingly, Holloway should be precluded from offering any testimony or documentary evidence purporting to reflect Noviello's "consent" to receive calls from Holloway.

Dkt. No. 53-3 at 1-2.

Holloway responds that "[e]vidence that somewhat touches on consent is relevant to issues beyond the affirmative defense of consent" and that "Holloway purchased a list of business leads including only persons who had given their consent to be contacted by phone about business lending" and "[t]his evidence is relevant to the question whether Holloway knowingly or willfully violated the TCPA." Dkt. No. 55 at 2.

The Court did determine that Holloway's "statement in its motion for summary judgment about the list of leads is not competent summary judgment evidence," where "[t]he list that this statement describes is a statement made out of court" and Holloway "is offering this statement for the truth of the matter asserted: that HFG obtained Noviello's information from a list of business phone numbers that had consented to further contact by phone." Dkt. No. 45 at 8, 9. The Court noted that Holloway "has not produced the list nor has it set forth a hearsay exception under

which the list can be admitted," "[a]nd so the list and the description of the list in paragraph 8 of Wines's declaration are not competent summary judgment evidence." *Id.* at 9.

But that ruling was made in that context, and Holloway may be able to argue at trial for a hearsay exception under which the list can be admitted. If it attempts to do so, Noviello can, at that time, raise any Federal Rule of Civil Procedure 37(c)(1) arguments for exclusions that he may have.

The Court denies Plaintiff's Motion in Limine No. 3.

## IV. DEFENDANT'S OBJECTION TO PLAINTIFF'S EXHIBIT 15

Holloway asserts that

> Exhibit 15 is Defendant's amended answer to Plaintiff's first set of interrogatories. Defendant objects to the admission of this document as an exhibit because many of the questions and answers are not relevant to the issues a jury will be asked to determine at trial, such as interrogatory number one stating who answered the interrogatories and providing his contact information. Regarding answers that are or may be relevant, Defendant objects to the admission of this document as an exhibit because doing so would give the written answers greater weight than the oral testimony of the witnesses at trial. Relevant interrogatory answers may be used against the answering party at trial by reading the answers aloud to the jury, but Defendant objects it is improper to admit an entire set of interrogatory answers, or even just the relevant answers, as a trial exhibit.

Dkt. No. 54 at 2.

The Court cannot agree.

Federal Rule of Civil Procedure 33(c) provides that "[a]n answer to an interrogatory may be used to the extent allowed by the Federal Rules of Evidence."

-9-

An opponent's interrogatory answer is admissible over any hearsay objection as a statement of a party opponent under Federal Rule of Evidence 801(d)(2)(A).

Rule 33(c) "has been construed to require a formal offer of evidence." *Jones v. Diamond*, 519 F.2d 1090, 1098 n.13 (5th Cir. 1975), *abrogated on other grounds by Gardner v. Westinghouse Broad. Co.*, 437 U.S. 478 (1978). In much more recent times, courts have explained that "answers to interrogatories are not considered evidence unless formally introduced at trial." *Brown v. Walmart Inc.*, No. 21-CV-4364, 2022 WL 1819520, at *2 (W.D. La. Apr. 25, 2022) (citing *Sandwich Chef of Texas, Inc. v. Reliance Nat. Indem. Ins. Co.*, 319 F.3d 205, 217 (5th Cir. 2003) (the "district court was not legally compelled to consider facts included in interrogatory answers that the plaintiff had not formally introduced in evidence"), *rep. & rec. adopted*, 2022 WL 1815881 (W.D. La. June 2, 2022).

To avoid jury confusion or distraction, the Court will order that Noviello must prepare and use redacted versions of Exhibit 15 that include only each individual interrogatory answer that he intends to rely on at trial.

Otherwise, the Court overrules Holloway's objections to Plaintiff's Exhibit 15.

SO ORDERED.

DATED: February 23, 2023

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE