IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEVE NOVIELLO, | § § | |
| Plaintiff, | § § | |
| V. | § § | No. 3:22-cv-52-BN |
| ADAM WINES CONSULTING, LLC d/b/a HOLLOWAY FUNDING GROUP, | § § § § | |
| Defendants. | § § § | |

### MEMORANDUM OPINION AND ORDER

Following the jury trial in this case, Plaintiff Steve Noviello has filed a Motion for a Judgment on Jury Verdict as to Internal DNC Claims and Motion for an Award of Treble Damages. *See* Dkt. No. 75. He "seeks a judgment reflecting the jury's award of damages on Plaintiff's Internal Do-Not-Call claims and further awarding treble damages against Defendant Adam Wines Consulting LLC d/b/a Holloway Funding Group." *Id.* at 1.

Defendant Adam Wines Consulting LLC d/b/a Holloway Funding Group opposes recovery of damages for the same call or text on both Noviello's DNC registry and internal DNC list claims and any increase in damages under 47 U.S.C. § 227(c)(5)(C) based on alleged willful or knowing violations of the regulations prescribed under 47 U.S.C. § 227(c). *See* Dkt. No. 81.

For the reasons explained below, the Court grants in part and denies in part Noviello's Motion for a Judgment on Jury Verdict as to Internal DNC Claims and

Motion for an Award of Treble Damages [Dkt. No. 75] and will separately enter a judgment consistent with this Memorandum Opinion and Order.

## Background

Noviello's motion summarizes the background of the issues now presented by explaining that,

> [a]t trial, Noviello offered testimony and introduced documentary evidence of ten (10) text messages and three (3) voice calls from Holloway, despite registration on the federal Do Not Call registry. Doc. No. 71.
> Furthermore, after Noviello instructed Holloway to stop calling on June 14, 2021, Holloway placed four (4) additional text messages. *Id.* The jury found Noviello's phone was a "residential line". Doc. No. 74. Furthermore, the jury found Holloway failed to prove there was an "established business relationship" or that Holloway was entitled to the "safe harbor" exemption. *Id.* The jury awarded the maximum statutory penalty of $500 per violation and found a violation for all 13 calls for Noviello's claim under the Federal DNC claim. *Id.* The jury also found Holloway liable for a total of four (4) calls – those after the recorded cease and desist demand on June 14, 2021- and separately awarded $500 for each of those calls. *Id.*
> Because the federal DNC registry claim and internal DNC list claim are separate counts and the jury awarded damages for those claims separately, the Court should enter judgment for those counts separately. Furthermore, because the evidence showed Holloway exhibited a reckless disregard about compliance with the TCPA, the damages awarded by the jury should be trebled.

Dkt. No. 75 at 1-2.

The Court discussed with counsel, before and during the trial, both of the post-trial issues that Noviello now tees up – whether Noviello could recover damages on the same call or text on both his DNC registry and internal DNC list claims under 47 U.S.C. § 227(c)(5) and whether any damages awarded by the jury should be increased

by the Court under 47 U.S.C. § 227(c)(5)(C) – and resolved to leave them for determination, if necessary, based on the jury's verdict. Both issues are now ripe.

## Analysis

**I.     Recovery of damages on DNC registry and internal DNC list claims**

According to Noviello,

> [a] plaintiff seeking damages under the TCPA may recover for multiple violations stemming from a single call. The statutory language supports that finding:
> 47 U.S.C. § 227(c)(5)(B) provides a consumer whose rights are violation may "receive up to $500 in damages for each such violation, whichever is greater. 47 U.S.C.S. § 227(c)(5)(B) (emphasis added). The statute explicitly allows for recovery for each violation, not each call. The violations of the federal DNC claim arise out of calls to Noviello despite his registration on the federal registry. The internal DNC claim arose out of calls after Noviello instructed Holloway to stop calling him in the June 14, 2021 call.
> Further, the ability for TCPA plaintiffs to recover for multiple violations arising out of a single call is well established by precedent. *See Thompson v. Dealer Renewal Servs.*, No. 4:21-cv-0467-P, 2021 U.S. Dist. LEXIS 223424, 2021 WL 5416605 (N.D. Tex. Nov. 18, 2021) (Pittman, J.) (assessing damages against the defendant for 22 calls with damages being applied under 227(b), 227(c) and the Texas Business and Commerce Code for each call); *See Schumacher v. Cap. Advance Sols., LLC*, No. H-18-0436, 2020 U.S. Dist. LEXIS 112130, 2020 WL 3474420, at *2 (S.D. Tex. June 8, 2020), *report and recommendation adopted*, No. H-18-0436, 2020 U.S. Dist. LEXIS 111864, 2020 WL 3470505 (S.D. Tex. June 25, 2020) (same).
> Where the violation for the federal do-not-call claim under 47 C.F.R. § 64.1200(c) is factually and legally distinct from the internal do-not-call claim under 47 C.F.R. § 64.1200(d) and the jury separately awarded damages for both violations, Noviello may recover for each violation, including where there is found to be two violations arising from a single call.
> In total, the judgment from the jury award, before damages are trebled should be $8500, which includes 13 violations of the federal DNC and 4 violations of the internal DNC claim at $500 per violation.

Dkt. No. 75 at 3-4 (cleaned up).

But Noviello points to no case law that permits a plaintiff to recover damages for multiple violations under Section 227(c)(5) for a single call or text – as opposed to permitting recovery damages under both Sections 227(b) and 227(c)(5) for violations under each of those separate sections arising from a single call or text. Several courts have adopted the latter position, but the Court has located no case law adopting the former position that Noviello presses here.

When presented with the issue of whether a plaintiff can recover damages for multiple violations under Section 227(c)(5) for a single call or text, the United States Court of Appeals for the Sixth Circuit has persuasively explained that a district court correctly concluded that, under Section 227(c)(5), "the TCPA does not allow for the award of statutory damages for each violation during a call, but instead limits statutory damages to one award per call." *Charvat v. GVN Mich., Inc.*, 561 F.3d 623, 631 (6th Cir. 2009). The Court of Appeals explained that the plaintiff argued "that the district court misinterpreted § 227(c)(5) and misapplied the rules of statutory interpretation," but that

> [s]everal courts … have allowed recovery on only a per-call basis, and [the plaintiff] cites no cases explicitly allowing for separate recoveries under the TCPA for multiple violations during the same call.
>     As noted above, the statute allows "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" to bring "(A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation, or (B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater," or both. § 227(c)(5). We believe that this language unambiguously allows for statutory damages on only a per-call basis. The term "each such violation" in subsection (B) refers to an antecedent noun. [The plaintiff] argues that this term refers to the noun phrase "a violation of the

> regulations" in subsection (A). Subsections (A) and (B), however, are two distinct prongs of the statute, one governing injunctive relief and the other governing money damages. For good reason, Congress may have intended to grant courts the power to enjoin each individual violation of each component of the regulations while at the same time allowing statutory damages to be awarded only once per call. We therefore believe that, in interpreting the damages provision, we properly look back to any relevant introductory language rather than language in a separate subsection governing the entirely different avenue of injunctive relief. When we turn to the introductory statutory language, the first stand-alone noun we encounter, looking back from "each such violation," is "call," and indeed a specific type of call, namely a "telephone call ... in violation of the regulations." Contrary to the suggestion of the Ohio Court of Appeals, "each such violation" cannot refer to the phrase "in violation of the regulations," because this phrase is not a noun but a prepositional phrase modifying the noun "call." Therefore, the term "each such violation" must refer to "telephone call ... in violation of the regulations," and damages are awardable on a per-call basis.
>
> The relevant regulation confirms our analysis. Section 64.1200(d) states, "No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." 47 C.F.R. § 64.1200(d). It then lists the "minimum standards" for these procedures, including maintenance of a written do-not-call policy, training of personnel, and recording of do-not-call requests. *Id.* The "violation of the regulations" is therefore the initiation of the phone call without having implemented the minimum procedures. Because, read in context, the statute and regulations focus on the telephone call itself, we conclude that the district court did not err in holding that [a plaintiff] cannot collect statutory damages on a per-violation basis under the TCPA.

*GVN Mich.*, 561 F.3d at 631-32 (cleaned up). The panel explained that the plaintiff "also argues that finding against recovery on a per-violation basis is inconsistent with another provision of the statute, § 227(b)(3), which deals with automated telephone equipment," but the panel noted that "the language of § 227(b)(3) differs from that of § 227(c)(5), primarily because the former does not even contain the word 'call'" and that, "as we have not yet interpreted § 227(b)(3), we need not reconcile our

interpretation of § 227(c)(5) with any previous interpretations of § 227(b)(3)." *Id.* at 631 n.7.

Another Sixth Circuit panel in 2011 later addressed the question of "whether [a plaintiff] may recover statutory damages under both the automated-call subsection of the TCPA, 47 U.S.C. § 227(b), and the do-not-call-list subsection, 47 U.S.C. § 227(c) (as implemented in 47 C.F.R. § 64.1200(d))." *Charvat v. NMP, LLC*, 656 F.3d 440, 448 (6th Cir. 2011). The Court of Appeals concluded that a plaintiff can do, after the panel "look[ed] first to the statutory language" and explained that

> [t]he fact that the statute includes separate provisions for statutory damages in subsections (b) and (c) suggests that a plaintiff could recover under both. Subsection (b) permits "an action based on a violation of this subsection or the regulations prescribed under this subsection," § 227(b)(3)(A) (emphases added), and subsection (c) permits an action based on a "telephone call ... in violation of the regulations prescribed under this subsection," § 227(c)(5) (emphasis added). [We recognize that in *GVN Michigan*, we declined to look to the injunctive-relief prong of § 227(c)(5) to interpret the damages provision, instead looking at the introductory language. 561 F.3d at 631-32. Unlike § 227(c)(5), however, the introductory language of § 227(b)(3) provides no relevant language indicating to what the phrase "each such violation" in the statutory-damages prong refers. The only language in § 227(b)(3) to which the "each such violation" phrase in the damages prong could refer is prong (A)'s "violation of this subsection or the regulations prescribed under this subsection" language.] Additionally, the two private-right-of-action provisions contain significant textual differences, indicating that they are distinct provisions to be treated independently. Subsection (c), which requires the maintenance of a do-not-call list, has a threshold requirement that a person "receive[] more than one telephone call within any 12-month period by or on behalf of the same entity." 47 U.S.C. § 227(c)(5). Subsection (c)'s private-right-of-action provision also includes an affirmative defense if "the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under [subsection (c) ]." *Id*. These provisions do not appear in the automated-call subsection, § 227(b)(3).

>        The two subsections, moreover, target different harms: Subsection (b) imposes greater restrictions on automated telephone calls and transmissions, which Congress found to be "more of a nuisance and a greater invasion of privacy than calls placed by 'live' persons." Subsection (c) and its accompanying regulations in 47 C.F.R. § 64.1200(d) impose minimum procedures for maintaining a do-not-call list that apply to all calls – live or automated – initiated for telemarketing purposes to residential telephone subscribers. By enacting separate private-right-of-action provisions, each including a statutory damages provision, Congress evidenced its intent that a person be able to recover for the telemarketer's failure to institute the minimum procedures for maintaining a do-not-call list as well as the additional harm of the call being automated. Recovery of damages for the two separate provisions does not upset Congress's balance in setting damages "'fair to both the consumer and the telemarketer.'" *See GVN Mich.*, 561 F.3d at 632 n.8 (quoting 137 Cong. Rec. S16,204, S16,205 (daily ed. Nov. 7, 1991) (statement of Sen. Hollings)).
>        We therefore conclude that a person may recover statutory damages of $1500 for a willful or knowing violation of the automated-call requirements, § 227(b)(3), and $1500 for a willful or knowing violation of the do-not-call-list requirements, § 227(c)(5) – even if both violations occurred in the same telephone call.

*NMP*, 656 F.3d at 448-49 (cleaned up).

The courts in the two decisions on which Noviello relied reached this same conclusion as in this 2011 Sixth Circuit *NMP* opinion. *See Thompson*, 2021 WL 5416605, at *2 n.2 ("The Court may grant damages for violations of both 227(b) and (c) based on the same conduct. *See Schumacher v. Cap. Advance Sols., LLC*, No. H-18-0436, 2020 WL 3474420, at *2 (S.D. Tex. June 8, 2020), *report and recommendation adopted*, No. H-18-0436, 2020 WL 3470505 (S.D. Tex. June 25, 2020)."). Neither decision addresses the issue that is presented here and that was decided in the 2009 Sixth Circuit decision, and neither, therefore, resolved this issue contrary to the Sixth Circuit's analysis in its 2009 *GVN Michigan* decision.

And the Court is persuaded by the Sixth Circuit panel's reasoning in *GVN Mich.*, 561 F.3d at 631-32, and adopts it here to conclude that Noviello cannot recover damages for multiple violations under Section 227(c)(5) for a single call or text.

This question is determined by Section 227(c)(5)'s statutory language, as the Sixth Circuit's reasoning in *GVN Mich.*, 561 F.3d at 631-32, reflects. The Court therefore cannot accept Noviello's argument that, "[j]ust as 227(b) and federal do-not-call under 227(c) provide for damages for different harms (annoyance from pre-recorded messages and annoyance from a violation of the boundaries established by registering with the DNC), federal DNC violations and internal DNC violations also provide recourse for different harms." Dkt. No. 82 at 2-3 ("Internal do-not-call violations provide for annoyance from a violation of an instruction from a consumer directly to the telemarketer. Federal do-not-call violations provide recourse to consumers who register a number on a database.").

Although the Sixth Circuit's 2011 *NMP* decision analyzed how Sections 227(b)(3) and 227(c)(5) "target different harms," it did so only after "look[ing] first to the statutory language" and comparing and contrasting the language in these two subsections. *NMP*, 656 F.3d at 448-49 & n.10.

The Sixth Circuit's 2009 *GVN Michigan* decision and 2011 *NMP* decision are not inconsistent, and the 2011 *NMP* decision's reasoning relies on, and does not undermine, the 2009 *GVN Michigan* decision's analysis of the statutory language, which the Court here adopts. That separate provisions of the regulations may target distinct harms does not change the proper analysis of Section 227(c)(5)'s statutory

language and the resulting conclusion that, in Section 227(c)(5), "the term 'each such violation' must refer to 'telephone call ... in violation of the regulations,'" and not "the phrase 'in violation of the regulations,'" and that "damages are awardable on a per-call basis." *GVN Mich.*, 561 F.3d at 632 (cleaned up).

Absent any increase under Section 227(c)(5)(C), Noviello's damages are limited to $6,500 ($500 for 13 calls and texts, as awarded by the jury).

## II. Possible trebling of damages under 47 U.S.C. § 227(c)(5)(C)

According to Noviello,

> [i]f the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the jury may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available for statutory damages. 47 U.S.C. § 227(c)(5)(C).
>
> A willful or knowing violation does not require bad faith, malice or deliberate intent to violate the law, but only "that the person have reason to know, or should have known, that his conduct would violate the statute." *Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 899 (W.D. Tex. 2001).
>
> In the case *Krakauer v. Dish Network L.L.C.*, No. 1:14-CV-333, 2017 WL 2242952, 2017 U.S. Dist. LEXIS 77163 (M.D.N.C. May 22, 2017), the Middle District of North Carolina imposed treble damages on Dish Network for "not caring about adherence to legal requirements." *Krakauer*, 2017 WL 2242952, at *28-29. That court also explained its imposition of treble damages "because of the need to deter Dish from future violations and the need to give appropriate weight to the scope of the violations." Case 1:14-cv-00333-CCE-JEP, Doc. No. 338, p. 28. Likewise, in *Harris v. World Financial Network Nat. Bank*, 867 F. Supp. 2d 888, 2012 U.S. Dist. LEXIS 46882, 2012 WL 1110003, *8 (E.D. Mich. April 3, 2012), the court awarded treble damages based on evidence that the defendant had "displayed a reckless disregard for Plaintiff's rights under the TCPA."
>
> Here, the recorded call from June 14, 2021 shows Holloway exhibited a reckless disregard for TCPA compliance. Where the TCPA requires express written consent before calls are made to a DNC registrant, Holloway called Noviello based on what it called a "UCC sweep." *See* Plaintiff's trial exhibit 14. There was not even a pretext in

> the recorded call of some type of "opt in" or consent, but a statement that Noviello appeared to have "sparking clean credit." *Id.* Even after Holloway told Noviello it would stop calling, the same person who said that (Adeel Amin) texted Noviello four more times. Doc. No. 71, P-9 through P-12.
>
> Like the court found in *Krakauer*, there is a deterrent justification to treble damages against Holloway. In addition to the brazen disregard of the TCPA's requirements, Holloway showed a similar disregard for trial. While Holloway's lawyer did all he could, Adam Wines could not do as much as show up in court. Mr. Wines indicated at first, there was weather-based justifications for his non-appearance, then vaguely mentioned something about being sick. However, at the pre-trial conference Plaintiff's counsel offered to Holloway's counsel, and expressed to the Court, that Noviello would consent to Wines appearing by video-conference. Accordingly, any weather, health or financial justification for the failure to appear would be eliminated. Wines did not even bother to appear with that accommodation offered.
>
> It is clear that Holloway does not take the TCPA, compliance or consumer privacy laws seriously, and could not be bothered by a federal jury trial about its own misconduct. If Holloway gets a mere slap on the wrist, all evidence suggests it will continue to violation federal law.
>
> Because of Holloway's reckless disregard for TCPA compliance and the clear need for deterrence against future violations, the damages awarded by the jury should be trebled.
>
> $8500 x 3 = $25,500.00
>
> With the trebling of the damages awarded by the jury, judgment should be entered in favor of Noviello against Holloway in the amount of $25,500.00.

Dkt. No. 75 at 4-7 (cleaned up).

Holloway responds that

> [t]o recover treble damages, a plaintiff must prove the caller knew or should have known his conduct violated the statute. *See, e.g., Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1107 (11th Cir. 2015). In the trial of this case, there was no evidence showing that a person or persons associated with Holloway knew or should have known they were violating the TCPA.
>
> To the contrary, in the June 14, 2021 recorded telephone call admitted as Plaintiff's Exhibit 14, the caller explained that the name and number for Noviello's company popped up on a UCC1 sweep, he explained he did business lines of credit for people with clean business

credit, and he asked Noviello if he was interested. The caller offered to take him off Holloway's list, and Noviello said that would be great.

As this discussion shows, the caller believed he was calling a business telephone number, and such calls do not violate the TCPA. Noviello did not say that the phone number on which he was being called was a personal or residential number, and Noviello did not say that he had registered his number with the National Do Not Call Registry. There was therefore nothing about this phone call that would have informed Holloway it would violate the TCPA by sending future text messages to this phone number. [Plaintiff claims all four text messages sent after June 14, 2021 were sent by Adeel Amin, the same person Noviello spoke to by phone on June 14, 2021, but the evidence does not support this assertion. Plaintiff's Exhibit 11 indicates it was being sent by "Adeel," but none of the other three text messages (P Exs. 9, 10, and 11) can be attributed to Adeel Amin. There is no name identified in these other three texts, and they were sent from a different phone number than the one used to send the text message marked as P Ex. 11.]

Regarding calls and text messages prior to June 14, 2021, there was no evidence regarding the knowledge of any Holloway employees or agents. Plaintiff could have deposed Adam Wines, Adeel Amin, or others to develop the evidence needed to prove up the knowing or willful requirements, but Plaintiff presented no such evidence at trial. The fact that Adam Wines did not attend the trial does not permit this court to fill the void of absent evidence with assumptions based on the fact that he did not attend. This Court should therefore deny Plaintiff's request for treble damages.

Dkt. No. 81 at 2-3 (cleaned up).

Noviello replies that,

[e]ven though Holloway did not even attempt to obtain express written consent or check the federal DNC before making calls to Noviello, Holloway claims because it believed Noviello's phone was a business line, its violations were not willful or knowing. Doc. No. 81, pp. 2-3. Even if that were true, that would not be a basis to abstain from awarding treble damages. Ignorance as to the law is not a defense against a charge of a knowing or willful violation. *See Krakauer v. Dish Network L.L.C.*, No. 1:14-CV-333, 2017 U.S. Dist. LEXIS 77163, at *32 (M.D.N.C. May 22, 2017) ("what Dish calls a mistaken belief is actually willful ignorance."); *Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 899 (W.D. Tex. 2001) ("willful or knowing violation does not require bad faith, malice or deliberate intent to violate the law, but only "that the person have reason to know, or should have known, that his conduct would

> violate the statute."). That Holloway claims it thought it was acceptable to call phone numbers it found doing "UCC sweeps" rather than obtaining express written consent, does not constitute a defense to willful or knowing violation.
>
> Furthermore, the fact that Holloway kept calling Noviello after Noviello's recorded cease and desist, demonstrates that non-compliance was not limited to the failure to check the do-not-call registry or obtain express written consent. Holloway also ignored the express instruction of a consumer who demanded privacy.
>
> Even if Holloway did not exhibit malice, it exhibited a brazen disregard for TCPA compliance and a brazen disregard for these legal proceedings which justify treble damages for deterrence purposes.

Dkt. No. 82 at 3-5 (cleaned up).

47 U.S.C. § 227(c)(5)(C) provides that, "[i]f the court finds that the defendant willfully or knowingly violated the regulations prescribed under [47 U.S.C. § 227(c)], the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under [47 U.S.C. § 227(c)(5)(B)]."

Following agency interpretations, courts have interpreted "'willful or knowing' [under Section 227(c)(5)(C)] … as not requiring bad faith, but only that the person have reason to know, or should have known, that his conduct would violate the statute." *Cunningham v. Patterson*, No. A-19-CV-409-LY, 2020 WL 7554569, at *2 (W.D. Tex. Apr. 3, 2020) (cleaned up), *rep. & rec. adopted*, No. 1:19-CV-409-LY, 2020 WL 7585887 (W.D. Tex. June 9, 2020). Other courts have endorsed the position that, under Section 227(c)(5)(C)], "mere negligence would not be enough to support trebling [an] award" and, "[i]nstead, [a defendant] would only be liable [for treble damages] if its actions demonstrated indifference to ongoing violations and a conscious disregard for compliance with the law." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 662 (4th Cir. 2019). And, when interpreting 47 U.S.C. § 227(b)(3)'s similar "willfully or

knowingly" language for treble damages for violation of Section 227(b)(3), courts have held that "[t]he requirement of 'willful[ ] or knowing[ ]' conduct requires the violator to know he was performing the conduct that violates the statute." *Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1107 (11th Cir. 2015).

After hearing the evidence at trial, the Court cannot conclude that it supports a finding that Holloway willfully or knowingly violated the regulations prescribed under 47 U.S.C. § 227(c). The recorded call to Noviello supports a finding of negligence by Mr. Amin on behalf of Holloway, not a knowing or willful violation of the prohibition on calling someone on a number on which he has placed a do-not-call request. The evidence at trial does not support a finding that, even after Holloway told Noviello it would stop calling, the same person who said that – Mr. Amin – texted Noviello four more times. As Holloway's response points out, there is no evidence clearing tying the other three text messages (Plaintiff's Exhibits 9, 10, and 11) to Mr. Amin. And, absent evidence to support that the actual violations were committed knowingly or willfully, Noviello's arguments based on the need for general or specific deterrence or on Holloway's or Adam Wines's participation – or lack thereof – in the trial of this case do not support an increase under Section 227(c)(5)(C).

For these reasons, the Court declines, in its discretion, to increase the amount of the award to Noviello under 47 U.S.C. § 227(c)(5)(B).

**Conclusion**

The Court grants in part and denies in part Plaintiff Steve Noviello's Motion for a Judgment on Jury Verdict as to Internal DNC Claims and Motion for an Award

of Treble Damages [Dkt. No. 75] and, for the reasons explained above, will separately enter a judgment in favor of Plaintiff Steve Noviello awarding damages under 47 U.S.C. § 227(c)(5)(B) in the amount of $6,500.00.

SO ORDERED.

DATED: April 4, 2023

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE